UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:17-CR-132 |
| | ) | |
| MARKELL DEWAYNE PRATHER | ) | |

## MEMORANDUM AND ORDER

Now before the Court is the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i), with affidavit and brief in support. [Docs. 35, 36]. The United States has responded in opposition [doc. 39] and the defendant has submitted a reply. [Doc. 43]. For the reasons that follow, the defendant's motion will be denied.

### I. BACKGROUND

Less than three years ago, the Honorable Thomas W. Phillips sentenced the defendant to a 120-month term of imprisonment for being a felon in possession of firearms and ammunition. The defendant is presently housed at FCI McDowell with a projected release date of June 20, 2026. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Jun. 9, 2021). He now moves for compassionate release due to the COVID-19 pandemic, his rehabilitative efforts, stage 3 kidney disease, hypertension, and low back pain.[1] The defendant also deems himself a "non violent offender" who "is not a threat to his community or society." [Doc. 35, p. 3-4] (emphasis in original).

---

[1] The defendant also raises arguments pertaining to his conditions of confinement. Such claims might be cognizable, *see, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976), but they should be presented in a civil lawsuit in the prisoner's district of confinement after the exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(a). There is no evidence that this defendant has exhausted his administrative remedies on those claims, nor is he incarcerated in this judicial district.

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to

2

compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[2] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

## A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 36]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

## B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, his rehabilitative efforts, stage 3 kidney disease, hypertension, and low back pain. He deems himself a non-violent offender who would be no threat to society if released.

Consistent with § 3582 and the Sixth Circuit's holding in *Jones*, this Court has considered the defendant's arguments (individually and in combination) along with the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

. . .

(5) any pertinent policy statement—

    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At the defendant's correctional institution, there are currently zero inmates and four staff positive for COVID-19, with 397 inmates and 45 staff having recovered, and no inmate or staff deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jun. 9, 2021). These numbers are historically significant, but the Court simultaneously notes that outside the prison setting our nation remains on alert in terms of COVID diagnoses, variants, hospitalizations, deaths, and lagging vaccination rates. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Additionally, the BOP's vaccination efforts are underway, with 129 staff and 748 inmates having been fully vaccinated at the defendant's prison. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jun. 9, 2021). In fact, the defendant himself

has been fully vaccinated. [Doc. 39, ex. 1].

BOP medical records confirm that the defendant has been diagnosed with, and is treated for, hypertension. [Doc. 36]. He has also been diagnosed with stage 3 chronic kidney disease (moderate). [*Id.*]. He has complained of related back and abdomen pain but has also refused to go to a nephrologist, leaving the Court uncertain as to how seriously the defendant in fact views his kidney disease. [*Id.*]. The BOP's SENTRY Report categorizes him as Care Level 1 in terms of both physical and mental health. "Care Level 1 inmates are less than 70 years of age and are generally healthy. They may have limited medical needs that can be easily managed by clinician evaluations every 6 to 12 months." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Jun. 9, 2021). Regardless, hypertension and chronic kidney disease are presently considered to be illnesses which "can" create an increased risk of severe illness from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jun. 9, 2021).

As for the defendant's rehabilitative efforts, SENTRY indicates that during the present incarceration he is employed, is pursuing his GED, and has incurred no disciplinary sanctions. Conversely, the defendant is noted to have "no interest" in the BOP's Residential Drug Abuse Program, despite a substance abuse history [Presentence Investigation Report ("PSR", doc. 21, ¶ 71] dating back to age 12.

The Court has considered the defendant's arguments and concludes that he has not met his burden of demonstrating extraordinary and compelling grounds for compassionate

6

release. The defendant has indeed been diagnosed with two conditions which "can" increase the risk of severe complications from COVID-19 but he is now fully vaccinated against that virus, thereby significantly reducing his odds of contracting it. The defendant's conduct while incarcerated is generally a positive, but not so much so as to be outside the norm. Considered together, these points do not amount to extraordinary and compelling reasons for release. The defendant's motion will be denied for that reason.

Additionally, compassionate release in this case would not be consistent with the 18 U.S.C. § 3553(a) factors. Although the defendant calls himself a non-violent offender who presents no danger to society, the record indicates otherwise.

In this case, the defendant stole ten firearms because his "man" (whose identity the defendant would not reveal) told him to. [Doc. 21, ¶¶ 10, 16]. The PSR notes that at least two of those guns, an AK-47 and an AR-15, were not recovered, resulting in unquestioned risk to the community. [*Id.*, ¶ 17].

The defendant's criminal history includes an alarming number of battery, assault, and reckless endangerment convictions.[3] According to the PSR, in 1999 he struck a victim in her face. [*Id.*, ¶ 38]. In 2001, he grabbed a victim by her face and pushed her down. [*Id.*, ¶ 42]. In 2003, he choked and struck a victim in the face before taking her car, with the victim's one-year-old child in the back seat. [*Id.*, ¶ 43]. The defendant eventually abandoned the vehicle, leaving the restrained child inside it. [*Id.*]. In 2009, he grabbed a victim by the mouth, choked her, grabbed her hair, punched her twice, and beat her head

---

[3] The defendant was sentenced as a criminal history category VI in this case, the highest in the federal system. [Doc. 21, ¶ 55].

7

against the ground. [*Id.*, ¶ 47]. In 2014, he knocked over a television and broke a fan during an episode in which he grabbed a victim around the neck, punched her on the forehead, pulled out a clump of her hair, and called her a "stupid bitch." [*Id.*, ¶ 52].

There are prior convictions for theft, grand larceny, unauthorized use of a debit card, and robbery. [*Id.*, ¶¶ 40-41, 49, 51]. There have been numerous violations of probation and parole. [*Id.*, ¶¶ 38, 40-41, 48, 51-52]. Four of the defendant's prior convictions pertain to unlawful operation of a motor vehicle [*id.*, ¶¶ 39, 44-46], he has thrice given a false name when arrested [*id.*, ¶¶ 39, 42, 48], and on one occasion he cursed and screamed at an officer [*id.*, ¶ 45], further illustrating his disrespect for the law and his danger to the community. The defendant is or was a member of the Vice Lords gang, beginning as "a child." [*Id.*, ¶ 67]. According to SENTRY, the BOP considers him a medium-security inmate with a high risk of recidivism.

The defendant's generally good conduct during his current term of imprisonment is strongly outweighed both by his lengthy and dangerous criminal history and by the concerning facts of conviction in this case. Additionally, more than five years of actual time remains on his 120-month sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). Compassionate release on these facts would not reflect the seriousness of the offense of conviction and the defendant's broader criminal history, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant.

## III. CONCLUSION

As provided herein, the defendant's motion for compassionate release [doc. 35] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge